Good morning, Your Honors. Devin Burstein and Richard Barnett on behalf of Mr. Hernandez-Escobar. I intend to address the bail-or-bailee issue. Mr. Barnett will be handling the due process violation, if it pleases the Court. That's odd. Anyway, go ahead. I don't think that divided arguments of this length help anybody. Go ahead. Thank you, Your Honor. And if you'd asked me, I would have said no. Go ahead. Understood, Your Honor. The issue, at least for my purposes, is whether the government can forfeit money belonging to an innocent bail-or when the bailee uses it in connection with criminal activity. The answer to that question is no. By virtue of his status as the bail-or of his life savings, Mr. Hernandez had a vested and superior interest in the money found at his son's house. And that is true regardless of whether his son unlawfully used his money for drug dealing. The reason is because his son never acquired any interest in the bail funds to begin with. Now, how do you get beyond the findings of fact by the district court that it was drug money? You've got an interesting bail-or-bailee argument, but how do you get by with the district court found in this case? So let's go to ER 270, Your Honor, and the district court says it's unnecessary to resolve whether petitioner ever gave defendant cash to be concealed or if he did what amount. This is so because the great weight of the evidence shows that the seized cash was clearly used for drug trafficking. That doesn't matter because that it's used for drug trafficking has no impact on it. If it's bailed funds, the person who uses it for drug trafficking never had an interest in it to begin with. The DC Circuit gives a great example of that same point in the BCCI case. What the DC Circuit says is – Yeah, but that's not what they found. But let me give you the example, Your Honor, if the court would allow me to give the example. Of course. Okay. Lawyer takes in trust funds from five different clients. Lawyer then decides to enter into a drug conspiracy, uses those trust funds to sell a whole bunch of drugs. Government then puts it – keeps going in the trust fund. Government comes in, sees it, says those are drug proceeds. No doubt they're drug proceeds. It doesn't matter. They are – he is a bail-or. He is the trustee. I mean he's the bailee, the trustee of them. Those clients, if it were, you know, Mr. Barnett or if it were me, I still have a superior right because that lawyer never had title. And that's what we're looking to under California law. That is the input. But he doesn't – I gather the district court had in his head that he wanted to know about these particular dollar bills. Correct. And you say that's not what he should be worrying about. Correct. Well, under Alcarez-Garcia, we know that's not the case. But more importantly – because Alcarez-Garcia, there's no tracing there. There's no serial numbers or fingerprints. But we know because that's what happens. That's what California law says. So we're looking for California law for the input. And we cited the Godot case, which is the identical thing bailed or the product of or substitute for that thing, together with all increments, is to be returned. And the Bank of America case that we cite from the California Supreme Court, Your Honor, says that when a bailor seeks return of their property, which is what happened here, they are, quote, in effect tracing and reclaiming their own property rather than asserting a presence in the bailee's general assets. That is, he is at all times tracing his funds. If this court agrees he's a bailor, as respectfully I think it must under Alcarez, as well as the California case law, it's really game over. Now, it's another thing to say, well, the district court maybe could have made other findings, but he didn't. In this case, the district court decided I'm not going to go to any credibility findings. I'm not going to consider any of that. I'm just going to find that as a matter of law, it doesn't qualify. And really the opposite is true. As a matter of law, it's, in fact, entirely in our benefit because as a bailor, he never lost title. Well, if Alcarez agreed with you legally, would we then remand for fact findings? Correct. As to whether it actually was what he said it was. That's what was, you could, or we could look at the, you could certainly do that, and we would welcome that remand. Or given the nature of this record, that we have two witnesses. Well, we have, remember, the district court admitted the statements of the agent as to what the son said, it's my dad's money. We have the testimony of my dad, it's my dad's money. Those are both unrebutted. So on this record, the only evidence, it's our burden, but on this record, the only evidence is that it was the dad's money as the bailor. So the court could also simply remand and say grant the petition. Either for fact finding or to grant the petition, we would welcome either. But we are clear that as a matter of law, the district court was wrong in its analysis. Did the district court ever deal with this bailor, but did you make this bailor argument? Yes. Did he deal with it at all? Yes, Your Honor. It was preserved at ER 241, 243, 253 before the district court's decision. We make this exact bailor argument. I don't want to cut, unless the court has more questions on bailor bailee. Okay. Thank you, Your Honor. Good morning, Your Honor. The issue I am addressing is the inclusion of a condition in the plea agreement. If we agreed on the first basis, do we reach this issue? Pardon me? If we agreed on the first basis, would we reach this issue? Would we reach this issue if we agreed with your colleague with regard to the bailor bailee issue? Would we reach your due process issue? No. Yes, if you reversed on the first issue, we would then have to confront it next time down when we go back to the district court. But we should reach it, is what you're saying. Pardon me? So, yes, we should reach it. The issue that you are arguing, is that correct? I'm sorry, Your Honor. One of my hearing aids went out, unfortunately. Yes, I think it is important because if it's remanded, we still have the issue of what are we going to do with this condition and what should the district court do as far as it is concerned. And I think what we do need to address is the inclusion of this provision in the plea agreements that the defendant further agrees not to contest or to assist another person in contesting the forfeiture of the properties. They include these in all of the plea agreements, and it's very troubling. It's one thing to say you're not going to contest the forfeiture. I understand that. But to prevent somebody else, to prevent the defendant from testifying on behalf of another individual, even if it's the truth, is just clearly a denial of due process in our view. And obviously we went beyond that when they did the interview, when Mr. Smith did the interview of the witness on February 6, 2016, where he basically doesn't simply warn him about perjury and so on, but basically says you're lying. I don't believe you. That is far greater interference, substantial interference, with the due process rights of Mr. Hernandez to have called his son. Is what the son originally said directly inconsistent with what he said later? Yes. Originally in the plea agreement he says it's all drug money and it's mine. Okay. But at the interview, and I'll quote it directly. Again, there's this ambiguity about are we talking about the dollars or are we talking about who owns it in a legal sense? In other words, it seems pretty incontrovertible or at least extremely likely that the actual dollar bills were money that he got from drug deals. Well, I would say that there is absolutely no evidence as to what he did with the money other than what we stipulated were the facts from the agent's report, which is just one paragraph. I'd like to briefly read it. Hernandez stated that he knew his father was going to contest the seizure and that the money was his father's. What about on the bail or bailee thing? I mean, suppose he had $75,000 from his father and it was in a safe deposit box someplace, right? So that this money actually was only his drug proceeds. Then what? This money was or was not drug proceeds? Well, it was in the sense that he had the money from the father secured and he could have given it back to the father. He chose not to, but this money was drug proceeds. If the money was sitting over in a safe deposit box, then the son would have said, well, this money at the house is not my dad's money. It's sitting over in a safe deposit box. This money is other money. But that's not what he said. He said, this is my dad's money, and this is why I was holding it for him. Any remaining time, I'll save mine. Thank you very much. Good morning. Ajay Krishnamurthy for the United States. Federal law governs this case and not state law. The district court's finding that the $73,000 that were actually seized were drug proceeds necessarily means that the father's interests could not have been superior within the meaning of – Can you tell me why Alcaraz-Garcia is not controlling here? There's two issues, Your Honor. The first is the competing interests of the United States versus everyone else. The second is the competing interests of the defendant and the third-party petitioner. At the point in which a pile of money is proceeds of a crime, the United States' interest is superior to everyone else's, and that's by the plain terms of the statute, as well as very clearly laid out in this court's decision in Hooper. Alcaraz-Garcia did not concern that issue at all. It only dealt with the second issue at the point where once you're past that first hurdle, whether the defendant's interest was superior to the third party's. It appears that that first issue wasn't right. Tell me why that is. What's the difference is? There was $35,020 in cash. $25,020 of it was forfeited. And the money that the third party is claiming appears to be at least in part that $25,020, right? Correct. So it simply does not address that first predicate issue at all. You're just saying that it's a silly opinion because it didn't— No, Your Honor. What I'm saying is that that issue wasn't raised, but by the same token, the holding doesn't bind this case. So the holding— I mean, what you said in your briefs was really wrong. You didn't say this, as I understand it. What you said in your briefs was that the Alcaraz-Garcia, because of the remand, really didn't hold anything about who was going to get the money. I agree. That is correct. The Alcaraz-Garcia only said that the petitioners were entitled to a hearing to entitle what portion of the money was theirs. It solely concerned the state law issue. It had nothing to do with this issue and the issue in this case. Judge Marzano, you raised one issue earlier, which is what would happen if there was another $75,000 sitting in a safe deposit box versus this drug money. That's exactly why every court to address this issue has held that a third-party petitioner can't assert a generalized claim and then try to claw back money that is drug proceeds. Otherwise, every defendant would just try to pay off his or her obligations with money that is otherwise forfeitable, and the forfeiture statute wouldn't. Well, he tries to draw a distinction between creditors and a situation that under state law is a bail or a bailee situation. And Alcaraz-Garcia does, at least in some respects, buy that distinction, does it not? Yes, Your Honor. Although, if Alcaraz-Garcia is read as saying that a third-party can claw back drug proceeds,  So again, under the plain terms of the statute, there's two timing, there's two provisions that are important to the timing of the interests. At the time that funds are used in criminal activity or derived from criminal proceeds, the United States' interest is a superior one. Under Section 853 N6A, the only third-party interest that is cognizable in this context is an interest that was superior to the defendant's prior to the commission of activity. If, as in this case, a pile of money is the proceeds of crime, it could not have existed. Tell me what Cooper case you're talking about. Cooper. Did I get it in your brief? Yes. Where? It's... Cooper, C-O-O-P-E-R? H-O-O-P-E-R. Oh, Cooper, I'm sorry. Yes. It's on page 18, 229, F3D 818. All right. Go ahead. So in that case, it was actually a very similar issue, in which two wives said that they should be able to... I know the case, okay. They should be able to claw back property that was purchased with drug proceeds. This court did not reach the state law issue. They said even if it were true that under state law they would have an interest, at the moment in which there was a finding that those houses were purchased with drug proceeds, the United States' interest was superior to everyone else's. Your position is that Alcarez-Garcia reliance on the Baylor-Bailey rule under state law was sort of pointless because in any event, even a Baylor interest is superseded by the government's interest. Yes, Your Honor, and that first issue just wasn't addressed. And Cooper, however, was not a Baylor-Bailey situation. It was not. But the point of that case is regardless of how a state property law transaction is characterized, if money is drug proceeds, under no theory can someone claw that back under that provision. There are other mechanisms by which someone could get them, but not under the theory that the petitioner is asserting here. Can I ask you this because I want to just be clear on what your position is? Let's say that the father had presented the son with the $70, however many thousand, in a shoebox in cash. And the son had engaged, left that money in the shoebox, but had engaged in drug trafficking activities, got an additional $75,000 or so in cash and mixed the cash together in the shoebox. So, again, there's no way to trace which specific bills came from the dad versus came from the drug trafficking activity. I assume in that situation you would say that the claimant has a good claim, correct? Correct, but only $75,000 would be drug proceeds to begin with. Right. So the other part wouldn't be forfeitable. Right, so it's not just the commingling of the funds so that you can no longer tell which particular dollars came from which source. Your issue here is that not only did the son take in the cash, but he then used that presumably to purchase drugs, which he then sold, and then had the cash that ended up being found was actually derived from the drug sales. That's the problem? No, at the point in which there is a finding that money is drug proceeds and that's not contested here, a third party is never going to be able to assert a superior interest in it. There are other ways they can get that back, just not under the theory that they've asserted here. With respect to the Sixth Amendment issue, very briefly, I just want to make clear what the plea agreement says. So the plea agreement first, Mr. Hernandez represented that he was the owner of the money and that it was forfeitable as drug proceeds. So this second provision that he would not agree to contest the forfeiture is no more than saying that the first provision is accurate because he cannot contest the forfeiture if it is in fact drug proceeds and he is the owner of the money. So this isn't really a case where the plea agreement is driving someone away. What we're left here is with a situation where the defendant voluntarily agreed that he was the owner of the money and those were drug proceeds and then was unwilling to back out of that. That did render him unavailable. That doesn't fall on the government. I see that Judge Berzon is... No, no, go ahead. I like to think while you're talking. Unless the court has any further questions. No, I think you've been very helpful. Go ahead. Anything else? No? All right. Thank you. Thank you, Your Honor. Alcarez-Garcia controls, not Hooper. Hooper is a fundamentally different case. And let me just quote from Hooper. To qualify for relief under 853, claimants' legal interests, if any, must have invested in claimants at the time their husbands committed the crime. Their husband's crime had to be committed before there could be any proceeds resulting from them. There was no community property interest at the moment the husbands violated the drug trafficking statute. They didn't give their husbands any money before. They were saying, we've got a community property interest in drug proceeds. Right, there was no Baylor-Bailey interest. This is Alcarez-Garcia. Well, it would be Alcarez-Garcia if in my hypothetical, right? Yes, Your Honor. But that's not the case. Well, it's also Alcarez-Garcia in this case because at the moment he gave him the funds as the Baylor, the Bailey, the son, never takes any interest in them. Well, so no, I guess I disagree with you because if the defendant in Alcarez-Garcia had taken, what was it, it was money to go buy cars, I can't remember. No, Alcarez-Garcia is, he's taking it, I think, down to Mexico. Okay, yeah, yeah. But if he had, before getting to the border, had used that money to instead buy drugs and then sold the drugs and had some different stash of cash, I think the case would have come out differently because it would have been proceeds at that point. It wasn't proceeds of any illegal activity in Alcarez-Garcia, was it? Right, but that gets us back to the BCCI example of the lawyer in his trust account who takes trust money. But in Alcarez-Garcia, the money was physically the same money. It's unknown. No, no, no, it was the same money. He was driving down to Mexico with the money that they had just given him to buy. Assuming that that's right, assuming that it was the same money, but it was forfeitable because it was in violation of the law. I mean, this whole argument that... It's in violation of the law because... It was undeclared money. It wasn't proceeds of drug trafficking activity. That's true. That's what's different here. Yes, that's what's different here, but what Alcarez-Garcia talks about is what we're looking at is who has the superior interest under state law. And Alcarez-Garcia answers that question conclusively and says it is the bailor. Once you have the superior interest, you never get past that. The government, if the bail... Here's the... I think this is the way the math works. The bailor has a superior interest. Tell me what case it is that... And I guess maybe I'm losing threads here. Okay. I mean, the fungibility seems to be the main question, i.e., if this particular money was, in fact, money that somebody handed him as part of a drug deal, wherever the money came from to buy the drugs, what case says we don't stop there, but we start wondering about whether somebody else has an interest in some $75,000 that this guy has, but this money is, in fact, the result of drug proceeds? Lester and Alcarez-Garcia because... It has this different fact pattern. I know, Your Honor, it has a different fact pattern, but they lay out the analysis, and the analysis... What I was trying to do in that math example is just... The government is doing a clever job of asking the court to skip steps and look just at the proceeds, but that's not the analysis. And if I could just do this one math, essentially like an equation. We look first to the bailor under state law. Because he's a bailor, the son never gains a vested interest. The bailor's interest is vested at all times. Because the son never gains a vested interest, the government can't gain an interest. It's not forfeitable because the son essentially converts it. It's the same example as the lawyer in the trust fund. If I was arguing about a lawyer stealing his client's money and using drug proceeds, I don't think I'd have much of an opposition to the idea that of course those clients get their money back. That the lawyer stole it and then converted it into drug money is not going to make the clients out of luck. I actually don't know. If the lawyer uses the money to purchase drugs, and then the money that's found is ultimately the proceeds of the drug sale... But why does the United States get that rather than the innocent owners? Well, because... The innocent clients. As you said or someone said, clearly the clients have a cause of action for a conversion against the lawyers, but that doesn't tell you whether the United States gets the money. Right. What does tell you, under the statute, Lester and Algares-Garcia, is state law. And if the lawyer is the bailee, the trustee, he doesn't or she doesn't have a vested interest that's superior at the outset. It is at all times Mr. Hernandez's father's vested interest that's superior. That's all that's required under the statute. A vested superior interest. Let's go back. This will be the last question because you're way over time. Unless one of my colleagues has a question. You say that Lester deals with this fungibility problem where? There it was real property that we were dealing with. Substitute property. Well, okay, but so what? What was the substitute property? Money for her interest. The house. They couldn't get the money from the drugs, so they went after the house. It was the government coming in and saying, we're going to go after substitute property. And the court says, no, no, no. At the time of the... So substitute property takes the place of drug proceeds because they couldn't get the drug proceeds. Okay. But that doesn't mean that if they could have gotten the drug proceeds, that she would have been entitled to the money. That's the problem is that it wasn't the drug proceeds. What if it was the drug proceeds? But I understand the question. But the... Right. We haven't confronted this exact case. This exact case. But I think the writing is on the wall based on Lester because what Lester is doing is saying, no, no, no. At the time, it's the wife. We're looking at the wife's interest is vested. It's superior. So even though it's all substitute proceeds... She did own this particular... She did have a community property interest in this particular house. This property. Right. Under California law. Or the fungibility or the different... All right. Thank you. Thank you, Your Honor. You guys have done very well. Thank you both very much. Thank you, Your Honor. The United States v. Fernandez-Escobar is submitted and we are in recess. Thank you. Thank you. Thank you. Thank you.
judges: Fisher, Berzon, Watford